IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONY IRVINE, | § | |
| TDCJ-CID NO. 1122042, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4275 |
| | § | |
| JOE FERNALD, *et al.*, | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights action under 42 U.S.C. § 1983, alleging that prison officials failed to protect him from other inmates. Defendant Joe Fernald has filed a motion for summary judgment, to which plaintiff has filed a response. Plaintiff has also filed a motion for summary judgment. For the reasons to follow, the Court will grant defendant's motion for summary judgment, deny plaintiff's motion, and dismiss this complaint with prejudice.

I. BACKGROUND

On January 29, 2003, plaintiff witnessed the murder of a correctional officer on the Clements Unit of the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ-CID). (Docket Entries No.1, No.58, Exhibit C). Shortly thereafter, he was transferred to the Wynne Unit, where he received mental health care for post traumatic stress syndrome. (Docket Entry No.58, Exhibit C). On March 18, 2003, plaintiff was attacked by two offenders, one of whom was a known gang member and the other a suspected gang member, allegedly because plaintiff had agreed to testify for the State in the Clements Unit murder trial. (*Id.*, Exhibit A, page 4). Plaintiff indicates that he suffered physical and emotional injuries from the assault but he does not state the nature of

such injuries.[1]  (Docket Entry No.1).  Plaintiff was brought to the Unit's infirmary, where a pre-segregation/lock-up physical examination was conducted by a licensed nurse.  (Docket Entry No.58, Exhibit C).  No physical injuries were reported.  (*Id.*).

Thereafter, on March 20, 2003, plaintiff was transferred to the Goree Unit of TDCJ-CID.  (*Id.*).  Plaintiff was examined by Goree Unit medical staff, who did not record any bruises, contusions or lacerations.  (*Id.*).

Plaintiff claims that he exhausted his administrative remedies and attached an un-executed Step 1 grievance to his original complaint.  (Docket Entry No.1).

Plaintiff seeks compensatory and punitive damages against defendants Fernald and Correctional Officer John Doe[2] on grounds that they failed to maintain proper care of a person in plaintiff's circumstances and failed to provide adequate protection.  (*Id.*).

Defendant Fernald moves for summary judgment on grounds that plaintiff did not properly exhaust his administrative remedies, has not overcome Fernald's defense of qualified immunity, and fails to show that defendant acted with deliberate indifference by failing to protect plaintiff from a known harm.  (Docket Entry No.59).

Plaintiff moves for summary judgment and reinstatement of Captain Sims as a defendant on grounds that defendants were deliberately indifferent to his security needs.  (Docket Entry No.56).

---

[1]  In his statement to an internal affairs investigator, plaintiff said that he was hit in the mouth and punched in the back of the head.  (Docket Entry No.58, Exhibit B, pages 30-31).

[2]  The Court dismissed plaintiff's claims against Captain Reginald Sims for want of an address by which to serve him with process.  (Docket Entry No.52).

II. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  To survive a properly supported motion for summary judgment, a section 1983 plaintiff must demonstrate, in light of "the substantive evidentiary standard of proof that would apply at the trial on the merits," that "a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

A. Omissions

Although plaintiff reports that he has not filed any other lawsuits in state or federal court relating to his imprisonment (Docket Entry No.1), plaintiff did not report that his complaint, which addressed claims against the same parties, was dismissed by this Court for failure to exhaust his administrative remedies on September 27, 2004.  *Irvine v. Fernald*, Civil Action No. H-04-3644 (S.D. Tex. Sept. 27, 2004).  The Court takes into account plaintiff's failure to report this case and

his lack of success in past litigation in assessing the credibility of his claims in this case. *See Moody v. Miller*, 864 F.2d 1178, 1179 n.1 (5th Cir. 1989).

B. Exhaustion

Under the Prison Litigation Reform Act (PLRA), prisoners are required to exhaust administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must exhaust all steps in the state administrative grievance process and do so properly, before filing in federal court. *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2387 (2006).

"The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level." *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004). The grievance procedure takes approximately ninety days to exhaust. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). A prisoner must pursue a grievance through both steps for it to be considered exhausted. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The primary purpose of the exhaustion requirement is to eliminate unwarranted federal court interference and to afford prison officials with the time and opportunity to address complaints internally. *Woodford*, 126 S.Ct. at 2387-88; *Johnson*, 385 F.3d at 516. The Fifth Circuit has taken a strict approach to the exhaustion requirement; nevertheless, failure to exhaust may be subject to

certain defenses such as waiver, estoppel, or equitable tolling.  *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003).

Defendant's summary judgment evidence shows that plaintiff did not execute a grievance complaining that any person on the Wynne Unit failed to protect him or to provide safe-keeping from violent inmates while he was incarcerated on the Wynne Unit.  (Docket Entry No.58, Exhibit A).  Plaintiff maintains that he did not file the grievance shortly after the assault because officials at the Goree Unit of TDCJ-CID, where he was placed in protective custody, would not allow him to file a grievance because of the secrecy of his particular case.  (Docket Entry No.59, page 10). Plaintiff was transferred to another unit in Huntsville, Texas on May 1, 2003, where he was placed in the general population.  (Docket Entries No.1; No.58, Exhibit C, pages 3-4).

Plaintiff claims that he submitted the Step 1 grievance, which is attached to his complaint, around October 21, 2004, over a year after the alleged assault on March 18, 2003, but the TDCJ grievance system failed to process it because the warden refused to sign the grievance.  (Docket Entry No.59, page 9).  Plaintiff's grievance was returned unprocessed with a notation that it was inappropriate, presumably because plaintiff sought compensatory and punitive damages.  (Docket Entry No.1, pages 6-7).

Plaintiff further claims that after filing the grievance, an officer of the Inspector General instructed him not to speak to anyone about this matter and not to file any more grievances because they would take care of him.  (Docket Entry No.59, page 10).  Plaintiff claims at the time he filed Civil Action No.H-04-3644, he had not been told to file any more grievances and he did not know that the warden had refused to process the Step 1 grievance.  (*Id.*, page 11).

To the extent that plaintiff was prevented from filing a grievance while he was in protective custody on the Goree Unit, plaintiff was estopped from exhausting his administrative remedies.  An administrative remedy is not available pursuant to § 1993e if prison officials prevent a prisoner from utilizing it.  *See e.g. Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir. Sept. 17, 2003) (unpublished) (holding administrative remedies were unavailable where prison authorities refused or failed to give an inmate the appropriate grievance forms).   However, plaintiff offers no explanation for failing to pursue his administrative remedies once he was transferred to the general population at another Huntsville facility on May 1, 2003.  Moreover, plaintiff fails to explain why the OIG would request that he not file a grievance in 2004, after he had filed a civil rights suit in federal court.  Court records show that the OIG had completed its investigation and closed the case on August 18, 2003.[3]  (Docket Entry No.58, Exhibit D, pages 3-4).

C. Safe-Keeping

Even if plaintiff had properly exhausted his administrative remedies before filing the present suit, he still fails to show that he is entitled to relief on his failure to protect claims.

The Eighth Amendment requires that prison officials protect prisoners from violence at the hands of their fellow prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  *Id.*  Prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm in the "next week or month or year."  *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

---

[3]   Inspector W.E. Knight submitted an exhaustive report on August 18, 2003.  (Docket Entry No.58, Exhibit D).  Knight indicated that no further action was required and further investigation was suspended. (*Id.*, page 4).

A prison official is liable for failure to protect only if he is deliberately indifferent to a substantial risk of serious harm. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate. *Adames*, 331 F.3d at 512. The official is not liable under the Eighth Amendment, however, if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Johnson*, 385 F.3d at 524 (quoting *Farmer*, 511 U.S. at 844).

In this case, plaintiff states no facts to show that Warden Fernald was aware that plaintiff faced a substantial risk of serious harm by plaintiff's placement in the general population on the Wynne Unit. Even if Fernald were so aware, given plaintiff's status as a State's witness in the murder trial of TDCJ officer, plaintiff fails to show that Fernald and John Doe responded unreasonably to the risk. Defendant's summary judgment record shows that plaintiff arrived on the Wynne Unit on January 31, 2003. (Docket Entry No.58, Part D, page 4). Plaintiff's cell-mate indicated that from the comments that plaintiff had made concerning his assignment on the Clements Unit, he concluded that plaintiff was probably a witness to the murder. Several other offenders, including those who attacked plaintiff, speculated that he might be a State's witness. (*Id.*, pages 4-5). On March 18, 2003, while standing in the shower line, plaintiff argued with offender Anthony Edwards, a suspected gang member, concerning a debt of fifty cents and two packages of soup. (Docket Entry No.58, Exhibit D, pages 4-5). Irvine said something to Edwards that angered him. After showering and returning to the day-room, Edwards hit plaintiff in the face. Plaintiff put Edwards in a headlock and bit him on the face. Edwards called plaintiff a snitch. (*Id.*). Offender

David Gibson, a confirmed gang member, also hit plaintiff.  (*Id.*).  They stopped fighting when a correctional officer entered the day-room.  (*Id.*).

Officer Duncan was working the showers on March 18, 2003; he observed plaintiff and Edwards talking to each other while waiting in line but he could not identify anything that they said. (*Id.*, page 13).  Officer Blaschke observed the fight in the day-room and filed disciplinary charges against Edwards and Gibson.   (*Id.*, pages 49, 55).   Captain Reginald Sims filed an offense/investigative report.  (*Id.*, page 3).  Plaintiff was taken to the infirmary for a pre-segregation physical.  (*Id.*, Exhibit C, page 3).  He was transferred to the Goree Unit the next day, where he was placed in protective custody.  (*Id.*).  Given this rapid and appropriate response, plaintiff fails to show that defendants were deliberately indifferent to a substantial risk of harm.

## D. Damages

Furthermore, plaintiff fails to show that he is entitled to compensatory or punitive damages.

Section 1997e(e) of 42 United States Code provides:  "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Fifth Circuit recently held that "it is the nature of the relief sought, and not the underlying substantive violation, that controls:  Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."  *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (finding § 1997e(e) bars compensatory damages for alleged First Amendment violation without physical injury).

Plaintiff alleges that he suffered neck and face injuries from the attack (Docket Entry No.1), but he does specify the nature of the injury that he suffered from the assault by Edwards or Gibson or defendants' alleged failure to protect.  Therefore, to the extent that plaintiff seeks compensatory relief for the alleged physical and emotional injuries that he incurred as a result of the alleged violation of his Eight Amendment rights, claims for compensatory relief are barred by § 1997e.

Likewise, plaintiff fails to show that he is entitled to punitive damages.  Punitive damages may be awarded only when the defendant's conduct "is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).  "The latter standard requires 'recklessness in its subjective form,' *i.e.* a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id.*

Assuming without deciding that defendants violated the Eighth Amendment as applied to the states through the Fourteenth Amendment, the Court finds that plaintiff is not entitled to punitive damages.  Plaintiff does not allege facts that would show that defendants acted with an evil intent or "reckless or callous indifference" to plaintiff's constitutional rights.

Accordingly, plaintiff is not entitled to punitive damages on his constitutional claims.

E. Plaintiff's Motion

Plaintiff moves for summary judgment and for reinstatement of Captain Sims as a defendant in this case.  The Court dismissed Captain Sims for want of an address by which to serve process; plaintiff provides no address for Captain Sims.  (Docket Entry No.56).  Accordingly, his request for Captain Sim's reinstatement will be denied.  For the reasons previously discussed, plaintiff's motion for summary judgment will be denied.

9

III. CONCLUSION

Based on the foregoing, the Court enters the following ORDERS:

1.    Defendant's motion for summary judgment (Docket Entry No.58) is GRANTED.  All claims against all defendants are DISMISSED WITH PREJUDICE.

2.    Plaintiff's complaint is DISMISSED WITH PREJUDICE.

3.    Plaintiff's motion for summary judgment and reinstatement of Captain Sims as a defendant in this case (Docket Entry No.56) is DENIED.

4.    All other pending motions, if any, are DENIED.

The Clerk will provide copies to plaintiff, to the TDCJ-CID Office of the General Counsel,

P.O. Box 13084, Capitol Station, Austin, Texas 78711, Fax:  512-2159.

SIGNED at Houston, Texas, on 22nd day of December, 2006.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE